UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LINDA LALONDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>TEXTRON, INC., TEXTRON SAVINGS PLAN, TEXTRON SAVINGS PLAN COMMITTEE, JOHN DOES 1-10,<br><br>Defendants. | C.A. No. 02-334S |
| MICHELLE A. SIMON-GRECH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>TEXTRON, INC., TEXTRON SAVINGS PLAN, TEXTRON SAVINGS PLAN COMMITTEE, JOHN DOES 1-10,<br><br>Defendants. | C.A. No. 02-491S |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

McINTYRE, TATE, LYNCH & HOLT
Suite 400
321 South Main Street
Providence, Rhode Island 02903
Tel: 401-351-7700

SQUITIERI & FEARON, LLP
Lee Squitieri (admitted pro hac vice)
32 East 57th Street
12th Floor
New York, New York 10018
Tel: 212-575-2092

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 2

ARGUMENT .................... 3

POINT I .................... 3

CERTIFICATION OF THE CLAIMS ASSERTED IN THIS ACTION UNDER ERISA § 502(a)(2) IS PROPER UNDER EITHER RULE 23(b)(1)(A) or 23(b)(2) .................... 3

A. Plaintiffs Satisfy Rule 23(b)(1)(A) .................... 4

B. The Prerequisites Of Rule 23(b)(2) Are Also Satisfied .................... 6

POINT II .................... 7

PLAINTIFFS HAVE MEET ALL THE TYPICALITY AND ADEQUACY REQUIREMENTS UNDER RULE 23(a)(3) AND 23(a)(4) .................... 7

A. Textron Has Not Identified Any Antagonistic Atypicality Or Unique Defenses .................... 7

B. Plaintiffs Status As Former Employees Does Not Undermine Typicality .................... 10

C. Plaintiffs Will Adequately Protect The Interests Of The Class .................... 14

CONCLUSION .................... 16

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LINDA LALONDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>TEXTRON, INC., TEXTRON SAVINGS PLAN, TEXTRON SAVINGS PLAN COMMITTEE, JOHN DOES 1-10,<br><br>Defendants. | C.A. No. 02-334S |
| MICHELLE A. SIMON-GRECH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>TEXTRON, INC., TEXTRON SAVINGS PLAN, TEXTRON SAVINGS PLAN COMMITTEE, JOHN DOES 1-10,<br><br>Defendants. | C.A. No. 02-491S |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs submit this reply memorandum in further support of their motion for class certification and in response to defendant's Objections To The Motion For Class Certification (the "Objection"). Plaintiffs have previously submitted their Opposition to Defendant's Cross-Motion for Summary Judgment.

## INTRODUCTION

Textron's Objection attempts to create issues of standing and atypicality where there are none. The atypicality argument raised by Textron resurrects the same failed arguments rejected by this Court in Rosen v. Textron, Inc., No. 02-190-S and 02-264-S, 2005 U.S. Dist. LEXIS 8826, at *35 (D.R.I. May 11, 2005) ("Rosen"). There, as here, Textron attacked the adequacy and typicality of the class representatives. As here, Textron tried to raise the spectre of unique defenses and smear the class representatives as disinterested plaintiffs in order to defeat class certification. As in Rosen these same arguments should be rejected here.

The "standing" argument is based on plaintiffs' respective testimony that neither is now an employee of Textron and neither expects to, nor does either have an intention to, return to work at Textron. According to Textron, such circumstances deprive plaintiffs, as a matter of law, of standing to bring claims on behalf of the class. However, according to established Supreme Court precedent, and First Circuit decisions applying that precedent plaintiffs have standing to sue despite (1) Textron's divestiture of the unit at which plaintiffs were employed, (2) their departure from Textron; (3) their intention not to return to the employ of Textron and (4) the fact that their rolled over Textron Savings Plan was merged, involuntarily, into the 401(k) of their new employer.

Finally, Textron argues that neither 23(b)(1) certification nor 23(b)(2) certification is appropriate. The arguments offered by Textron are factually unsupported and based on aberrational precedent. Textron is inviting this Court to deviate from numerous recent well-reasoned opinions granting either or both Rule 23(b)(1) and/or 23(b)(2) certification for ERISA cases similar to this one. Textron's invitation, not supported by a single case from the First Circuit or any court within the First Circuit or from any other Appellate Court, should be

rejected. Certification under § 23(b)(1)(B) and/or 23(b)(2) has been repeatedly granted for ERISA claims alleging violations of fiduciary duties to plan participants. See Part III, infra.

## ARGUMENT

## POINT I

## CERTIFICATION OF THE CLAIMS ASSERTED IN THIS ACTION UNDER ERISA § 502(a)(2) IS PROPER UNDER EITHER RULE 23(b)(1)(A) or 23(b)(2)[1]

Courts consistently hold that claims brought under ERISA 502(a)(2) (as the claims asserted in this action) are particularly well-suited for class action treatment. Courts have therefore "repeatedly certified actions brought under ERISA § 502(a)(2) as class actions." See In re CMS Energy ERISA Litig., 225 F.R.D. 539, 543 (E.D. Mich. 2004); Bublitz v. E.I. du Ponte de Nemours & Co., 202 F.R.D. 251, 259 (S.D. Iowa 2001); Rankin v. Rots, 220 F.R.D. 511 (E.D. Mich. 2004). Congress has embraced the principle that ERISA claims should be brought in a representative capacity. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985) (noting that Congress expressed its intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").

To accept Textron's arguments against a grant of 23(b)(1) or 23(b)(2) certification is to rule, in effect, that all run-of-the-mill ERISA fiduciary duty violation claims such as this one are inherently uncertifiable. Astoundingly, Textron has not advanced any novel legal arguments on identified any factual peculiarity in this case that would distinguish this case from the long line of ERISA cases recently certified. Instead Textron offers only the same repeatedly rejected arguments which failed in a multitude of other cases.

---

1 Plaintiffs request for 23(b)(1) certification is proceeding only for 23(b)(1)(A) certification.

### A. Plaintiffs Satisfy Rule 23(b)(1)(A)

To proceed as a class action under Rule 23(b)(1)(A) a plaintiff must demonstrate that the prosecution of separate actions would create the risk of "inconsistent or varying adjudications with respect to individual members of the class, "Rule 23 (b)(1)(A).

Courts considering ERISA breach of fiduciary duty claims for class certification have often followed the reasoning of the drafters of the Federal Rules of Civil Procedure in concluding that subsection 23(b)(1) is the most appropriate basis for class certifications. See Aks v. Southgate Trust Co., No. 92-2193, 1992 U.S. Dist. LEXIS 20442, at *9 (D. Kan. Dec. 24, 1992) (certifying ERISA claims). As one court explained:

> We find that the ERISA [claims for breach of fiduciary duties, among others] are appropriate for certification under both [23(b)(1)(A) and (b)(1)(B)]. All of these claims relate to the interpretation and application of ERISA plans. [Defendant] treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against defendants should this class be denied. Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice.

See also Bunnion v. Consol. R. Corp., No. 97-4877, 1998 U.S. Dist. LEXIS 7726, at *13 (E.D. Pa. May 14, 1998).

Similarly, in In re Qwest Sav. & Inv. Plan ERISA Litig., No. 02-RB-464, 2004 U.S. Dist. LEXIS 24693, at *21 (D.Colo. Sept. 24, 2004) the Court conditionally held that class certification under Rule 23(b)(1) was proper:

> . . .I note that the primary relief ERISA plan participants can obtain in an action for breach of fiduciary duty under ERISA is plan-wide relief. 29 U.S.C. § 1132(a)(2). The availability of such relief makes this case well-suited to certification under Rule 23(b)(1). Plaintiffs seeking plan-wide relief are acting as representatives of the plan, presumably on behalf of the participants and beneficiaries

> of the plan. Pursuit of separate actions for plan-wide relief would create a risk of varying adjudications concerning the bases and availability of such relief. Further, such an adjudication based on the claims of a few Plan participants may impede the ability of [*21] others to protect their interests. On the other hand, resolving this case as a class action will permit a determination of whether the Plan as a whole is entitled to relief and, if so, the nature of the appropriate plan-wide relief. Of course, plan-wide relief will, indirectly, affect the interests of all relevant Plan participants and beneficiaries. In short, it is best to consider the interests of a class of relevant Plan participants and beneficiaries, as opposed to the interests of a few representative Plan participants, in determining whether the defendants breached their duties, whether plan-wide relief is appropriate, and, if so, what relief is proper. I find that class certification under Rule 23(b)(1) is appropriate. (Emphasis supplied].

See also In re CMS Energy ERISA Litig., 225 F.R.D. at 545-46 (certifying 223(b)(1)(A) and (b)(1)(B) class); Rankin, 220 F.R.D. at 522 (same); Kolar v. Rite Aid Corp., No. 01-1229, 2003 U.S. Dist. LEXIS 3646, at *9 (E.D. Pa. Mar. 11, 2003) (same); Koch v. Dwyer, No. 98 Civ. 5519, 2001 U.S. Dist. LEXIS 4085, at *2-3 (S.D.N.Y. Mar. 23, 2001) (certifying (b)(1) and (b)(2) classes); Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 397 (E.D. Pa. 2001); In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457 (E.D. Pa. 2000) (certifying 23(b)(1) class); Bunnion, 1998 U.S. Dist. LEXIS 7727, at *59; (certifying (b)(2) class); Feret v. CoreStates Fin. Corp., No 97-6759, 1998 U.S. Dist. LEXIS 12734, at *3 (E.D. Pa. Aug. 18, 1998) (certifying b(1) class); Gruby v. Brady, 838 F. Supp. 820, 827 (S.D.N.Y. 1993); Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co., 140 F.R.D. 474, 479 (S.D. Ga. 1991); Furstenau v. AT&T Corp., No. 02-5409 (GEB), 2004 U.S. Dist. LEXIS 27042, at *13-14 (D.N.J. Sept. 2, 2004) (same).

Plaintiffs breach of fiduciary duty claims satisfy both prongs of Rule 23(b)(1). Success will bring Plan-wide relief while failure would likely preclude actions by other participants of the Plan. Accordingly, class action treatment under Rule 23(b)(1)(A) is the best way to manage this

litigation and ensure that the rights of all participants of the Plan are protected. See e.g., Ikon, 191 F.R.D. at 466 (recognizing the difficulty imposed by contradictory dispositions and observing that "contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties implementing such decisions"); Kolar v. Rite Aid Corp., 2003 U.S. Dist. LEXIS 3646, at *9 ("Palpably inconsistent or varying adjudications would be intolerable for the employees of the same employee benefit plans") (internal quotations omitted).

With respect to the relief sought, if Plaintiffs prove that Defendants breached their fiduciary duties in the manner alleged, Defendants will be forced to make the Plan whole and take whatever other equitable actions are ordered by the Court. ERISA § 502(a)(2),93), 29 U.S.C. 1132(a)(2,)(3); ERISA § 409(a), 29 U.S.C. 1109(a). Indeed, remedies under ERISA §502(a)(2) are by definition plan-wide, which is a classic example of equitable relief. Specialty Cabinets & Fixtures, 140 F.R.D. at 479 (noting that "[t]he right to recovery, after all, belongs to the plan").

Defendants' citation to Nelson v. Ipalco, No. 02-477-C, 2003 U.S. Dist. LEXIS 26392, at *46 (S.D. Ind. Sept. 30, 2003) should not dissuade this Court. In Rankin, the Court found Nelson "unpersuasive" while finding the reasoning in Ikon and Bunnion (upon which plaintiffs here urge the Court to rely) "more persuasive than the reasoning in Ipalco." 220 F.R.D. at 522.

### B. The Prerequisites Of Rule 23(b)(2) Are Also Satisfied

Under Rule 23(b)(2) certification is appropriate "if class-wide injunctive relief is sought when the defendant 'has acted or refused to act on grounds generally applicable to the class.'" DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1175 (8th Cir. 1995), cert. denied, 517 U.S. 1156

(1996), quoting Fed. R. Civ. P. 23 (b)(2). Requests for monetary relief do not preclude certification under Rule 23(b)(2) because "[m]onetary damages are almost always requested when injunctive relief is sought." Bradford v. ACGO Corp., 187 F.R.D. 600, 605 (W.D. Mo. 1999). These fiduciary breaches affected all of the Plans' participants and beneficiaries, and it cannot be disputed that this conduct was "generally applicable to the entire class." See Amara v. CIGNA Corp., No. 3:01CV 2361, 2002 U.S. Dist. LEXIS 25947, at *11 (D. Conn. Dec. 20, 2002) (claim for plan-wide relief under ERISA falls squarely within the purview of subsection (b)(2); Bunnion, 1998 U.S. Dist. LEXIS 7727, at *47 (granting certification of (b)(2) class to assert plan wide relief under ERISA).

Once the Plan recoups its losses through the relief sought by Plaintiffs, any consequential financial benefit to individual participants and beneficiaries "would flow directly and incidentally" from the Plan's recovery. Bublitz, 202 F.R.D. at 259 (granting certification of (b)(2) class in ERISA breach of fiduciary duty case); see also White v. Sundstrand Corp., No. 98 C 50070, 1999 U.S. Dist. LEXIS 15091, at *19-20 (N.D. Ill. Sept. 30, 1999) (same).

Thus, Plaintiffs also satisfy the requirements of Rule 23(b)(2).

## POINT II

## PLAINTIFFS HAVE MET ALL THE TYPICALITY AND ADEQUACY REQUIREMENTS UNDER RULE 23(a)(3) AND 23(a)(4)

### A. Textron Has Not Identified Any Antagonistic Atypicality Or Unique Defenses

In this case, Plaintiffs' claims are typical of, and precisely aligned with, those of the Class. The instant claims of the Plaintiffs and the Class are based on the same legal theories, namely, that Defendants breached their ERISA fiduciary duties with regard to investment of Plan assets in Textron. Plaintiffs and the Class were all participants in the ESOP. The defendants administered the Plan in the aggregate – there are no individual issues here other than damages.

To satisfy typicality plaintiffs need only show that their "claims arise from the same course of conduct that give rise to the claims of the absent members." In re Polymedica Corp. Sec. Litig., 224 F.R.D. 27, 36 (D. Mass. 2004) (quoting Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1998)). See also Kinney v. Metro Global Media, Inc., No. 99-579 ML, 2002 U.S. Dist. LEXIS 18628, at *13-14 (D.R.I. Aug. 22, 2002). As a result, the typicality requirement is satisfied. See, e.g., Furstenau v. AT&T Corp., 2004 U.S. Dist. LEXIS 27042, at *11 (typicality satisfied where plaintiffs must prove common issues "of whether defendants were fiduciaries and whether they breached their fiduciary duties"): Rankin, 220 F.R.D. at 519 (finding typically satisfied and observing that the "appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs") (quotations omitted); McHenry v. Bell Atl. Corp., No.97-6556, 1998 U.S. Dist. LEXIS 12733, at *4 (E.D. Pa. Aug. 19, 1998) (typically satisfied where Defendants' alleged "imprudent management of savings plan accounts").

The fact that plaintiffs are no longer employed at Textron and the fact that both plaintiffs added more Textron stock to their pension accounts hardly makes them unique. The record clearly demonstrates that many many participants in the Textron Savings Plan during the Class were subsequently terminated by Textron. See Consolidated Amended Complaint ¶ 46, 47. Furthermore, the complaint alleges that plan participants' accumulation of Textron stock continued throughout the Class Period. Amended Complaint ¶ 52. Textron also argues that here plaintiffs' failure to divest some Textron stock and their decisions to increase the amount of Textron stock in their retirement plans makes them atypical of the class. Such conduct hardly makes plaintiffs unique inasmuch as it is Textron which continuously offered inducements to its employees to purchase Textron stock during the Class Period. Textron fails to explain what is "unique" about this conduct. Plaintiffs' ignorance of the need to diversity during the Class

Period, when Textron, but not plaintiffs or the Class members, knew of the financial and operational problems faced by Textron is entirely consistent with the claims and allegations in the Amended Complaint. Textron's arguments are factually incorrect and without legal support. Even if these facts constitute a "defense" for defendants' breach of fiduciary duties – they constitute a defense Textron will seek to raise against the entire Class. So-called "unique" defenses, which a defendant may choose to raise against the entire class do not render the class representations atypical under established law. See, e.g., Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994) ("Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories"); Walsh v. Northrup-Grumman Corp., 162 F.R.D. 440 (E.D.N.Y. 1995) (court rejected defendants' arguments that plaintiffs were making dissimilar arguments and had different employment status and had different participant status constituted grounds for finding atypicality).

Plaintiffs' responses at their respective depositions that they would not benefit from an order requiring Textron to "give money to the plans" (Objection at 13 citing Simon Grech Tr. at 46: 16-19; and LaLonde Tr. at 22: 17-23) should not render them inadequate or constitute an admission of her lack of legal entitlement to any benefits recovered in this case. See, e.g., Fulco v. Continental Cablevision, Inc., No. 89-1342-S, 1990 U.S. Dist. LEXIS 11393, at *4 (D. Mass. June 19, 1990) (knowledge of law not a requirement of class representative).

Moreover, certification would be appropriate even if the Plaintiffs were subject to individualized defenses (but here they are not), because Plaintiffs', "must still prove the same core issues of whether defendants acted as fiduciaries and whether they breached their fiduciary duties." Rankin, 220 F.R.D. at 519. See also Walsh v. Northrup-Grumann Corp., 162 F.R.D. at

445 ("Minor conflicts, . . .do not make a plaintiffs' claims atypical." [Emphasis supplied]). Accordingly, the "typicality" requirement of Rule 23(a)(3) is satisfied.

**B. Plaintiffs Status As Former Employees Does Not Undermine Typicality**

Textron contends that plaintiffs are atypical because of potential challenges to their standing because both are ex-employees of Textron and neither has an expectation of returning to employment at Textron. Defendants' Objection at 19. Textron's legal argument flies in the face of long established First Circuit precedent such as Vartanian v. Monsanto Co., 14 F.3d 697 (1st Cir. 1994), and is also inconsistent with the law articulated in Crawford. If Textron's arguments are accepted, it will encourage employers to fire any plan participant who claims to have been deprived of benefits. In the extreme, it would allow an employer who had violated ERISA to escape liability merely by terminating the affected participants. Such a result would be contrary to the First Circuit's view of ERISA law that "[t]he legislative history of ERISA indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions." (Citations to Senate Reports omitted). Vartanian, 14 F.3d at 702. In Vartanian, the First Circuit declined to interpret the standing requirements of ERISA in such a way as to "frustrate Congress's intention to remove jurisdictional and procedural obstacles to such claims." Id.

Plaintiffs meet the statutory definition of "participant" as refined by judicial precedent. ERISA allows private civil actions to be brought by "participants" or "beneficiaries" 29 U.S.C. § 1132 (a). A "participant" is defined under ERISA as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covets

employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7). [Emphasis supplied].

The United States Supreme Court has held that "participant" under ERISA is "naturally read" to include, among others, "former employees" who have a "colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-118 (1989). In Firestone, the Supreme Court reasoned that former employees may satisfy the "may become eligible" component of the participant definition despite the participant's separation from the employer. 489 U.S. at 117-118. In Firestone, the Supreme Court held that "in order to establish that he or she 'may become eligible' for benefits a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id.

The First Circuit, in Vartanian, accepting Firestone's description of "participant", agreed with the Sixth Circuit's holding in Astor v. IBM, Corp., 7 F.3d 533, 538-39 (6th Cir. 1993) that the standing question in ERISA cases cannot be applied in a formulaic manner to dismiss claims based on lack of standing. 14 F.3d at 702. Specifically, the First Circuit in Vartanian endorsed the Sixth Circuit's holding in Astor that:

> In determining who is a participant for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim. . .

Vartanian, 14 F.3d at 701, citing Astor, 7 F.3d at 538-539. Ultimately, the First Circuit in Vartanian, in reversing the district court's dismissal of plaintiffs' claims, held that plaintiffs' had standing under ERISA as "participants" where their claim fell "squarely within the 'zone of interests' ERISA was designed to protect." Id. at 702, citing Astor, 7 F.3d at 538-39. Thus in Vartanian, the First Circuit reinstated the claim of a plaintiff who alleged that he was a

"participant" under ERISA of a plan which had not even came into existence at the time the plaintiff ceased to be an employee because under "the broadly inclusive scope of the ERISA statute" (Id.) it would be consistent with the ERISA statute to decline to bar plaintiff's claim for lack of standing. The First Circuit's bottom line holding, in Vartanian, equally applicable here is:

> Where the employee shows that in the absence of the employer's breach of fiduciary duty he would have been entitled to greater benefits than those which he received, then his receipt of payment cannot be used to deprive him of "participant" status and hence standing to sue under ERISA.

Id. at 703.

Here, plaintiffs have established a colorable claim which falls squarely within ERISA's protections. The viability of plaintiffs' claims have been sustained by the First Circuit in Lalonde v. Textron, Inc., 369 F.3d 1 (1st Cir. 2004).

The cases cited by Textron do not justify any deviation by this Court from the First Circuit's holding in Vartanian which occurred in a factual setting identical to the facts here. In Vartanian, as here plaintiff, was a former employee of the company he was suing. In Vartanian, as here, the plaintiff had closed his account and had withdrawn all his assets and benefits. The First Circuit held however that those facts did not deprive the former employee of standing. 14 F.3d at 702. Plaintiffs here fall squarely within the holding in Vartanian, that receipt of payment cannot be used to deprive the former employee of participant status where the former employee shows that "in the absence of the employees breach of fiduciary duty he would have been entitled to greater benefit than those they received." Id. at 703. The First Circuit's holding in Crawford v. Lamantia is to the same effect. 34 F.3d 28 (1st Cir. 1994), cert. denied, 514 U.S. 1032 (1995). In Crawford the First Circuit observed that plaintiff had "failed to show that

defendants' alleged breach of fiduciary duty had a direct an inevitable effect on his benefits" and thus had failed to make the showing necessary to establish standing. 34 F.3d at 33. In so holding the First Circuit relied on Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 348 (5th Cir. 1989) which held that four employees who were paid their benefits had standing based on their allegations that defendants breach of fiduciary duty resulted in the sale of assets for less than fair value. Defendants' citations to Brengettsy v. LTV Steel Hourly Pension Plan, 241 F.3d 609 (7th Cir. 2001) is also factually distinguishable from this situation. In Brengettsy, the former participant was not complaining of any breach of fiduciary duty which deprived him of benefits. He was alleging that vested defined benefit plan benefits had not been properly calculated. The Seventh Circuit held however, on the facts, that the former participant got exactly what the plan documents called for. Thus, reasoned the Seventh Circuit, the former participant suffered no loss and no deprivation of any vested right. Defendants citation to Teagardener v. Republic-Franklin, Inc. Pension Plan, 909 F.2d 947 (6th Cir. 1990), cert. denied, 498 U.S. 1027 (1991) is also factually inapposite. In Teagardener, the Sixth Circuit held that plaintiffs were not participants because they left their employment before benefits vested. 909 F.2d at 953-4. Here, plaintiffs were fully vested.

Finally, even if the Court wishes to adopt the stricter view of participant standing expressed by the Sixth Circuit in Swinney v. GMC, 46 F.3d 512 (6th Cir. 1995). Plaintiffs here are still "participants" with standing under such analysis. Here as in Swinney the former employee was terminated by the fiduciary. See Simon-Grech Tr. at 7: L 12-17 (explaining that her Textron 401(k) was transferred to Collins & Aikman when Textron sold certain lines of business to Collins & Aikman. See also Lalonde Tr. 4: L 5-12; p. 12 L 20; p. 13 L 10 (same). Plaintiffs as well as all other similarly situated ex-employees of Textron were terminated by the

employer and whose vested benefits were returned by the company. In like circumstances, (i.e. involuntary separation and return of vested benefits) many courts have recognized "participant" standing for ERISA purposes. See Mullins v. Pfizer, 23 F.3d 663 (2d Cir. 1994); Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1220-21 (5th Cir.), cert. denied, 506 U.S. 820 (1992); Swinney v. GMC, 46 F.3d at 512; Astor, supra; Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d, 786 (7th Cir. 1996); Waller v. Blue Cross, 32 F.3d 1337 (9th Cir. 1994).

### C. Plaintiffs Will Adequately Protect The Interests Of The Class

Under Rule 23(a)(4), "[t]he focus . . . is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton v. Union Nat'l Bank, 688 F.2d 552, 562-63 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983), citing Gonzalez v. Cassidy, 474 F.2d 67, 72 (6th Cir. 1973). See also Sosna v. Iowa, 419 U.S. 393, 403 (1975). Neither of these is directly challenged by defendants.

The burden of disproving adequacy is on the defendant Lewis v. Curtis, 671 F.2d 779, 788 (3rd Cir.), cert. denied, 459 U.S. 880 (1982); Feret v. CoreStates Fin. Corp., supra, *29.

Rule 23(a)(4) is easily met in this case. As discussed above with respect to the "typicality" requirement, the claims and interests of Plaintiffs are congruent with those of the other class members, and Plaintiffs have no interests antagonistic to those of the other class members. See Rankin, 220 F.R.D. at 521. Defendants' attack on plaintiffs level of participation and knowledge of the case pursues a line of attack expressly disapproved by the Supreme Court in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 372-374, reh'g denied, 384 U.S. 915 (1966); Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60-62 (2d Cir. 2000). As a mater of fact, both plaintiffs testified to their understanding of the claims and roles as class

representatives and the general status of the case. At their respective depositions, both plaintiffs ably articulated their claims and their rule in this suit. See, e.g., Simon-Grech Tr. at p. 23; 25-26; 29-30; 45. Lalonde Tr. p. 15, 18-19. In addition, both plaintiffs have complied with numerous requests for information served by defendants. See Defendants Appendix L, M and N.

Griffin v. GK Intelligent Systems, Inc., 196 F.R.D. 298 (S.D. Tex. 2000) cited by defendants is inapposite. In that case neither plaintiff displayed any familiarity with the claims in the case. Indeed in Griffin one proposed class representative believed that if the class action were successfully resolved in favor of the class, he would still have to file an individual suit to recover any damages. Id. at 302. Hereby contrast defendant has failed to point to any testimony by plaintiffs that would allow defendants to discharge their burden of disproving adequacy.

Plaintiffs' counsel meets the adequacy requirement. Each of the firms Squitieri & Fearon, LLP, The Wexler Firm LLP, and The Law Offices of Charles J. Piven, P.A. are accomplished class action attorneys. See Firm resumes attached hereto as Exhibits A, B and C respectively. Defendants raise no specific challenge to the qualifications of any firms seeking appointment as class counsel in this litigation, except to note typographical errors in the spelling of plaintiffs' names.

## CONCLUSION

For all of the foregoing reasons plaintiffs respectfully request that their motion for class certification be granted in its entirety.

Dated: Providence, Rhode Island
June 29, 2005

Respectfully submitted,

David J. Strachman

McINTYRE, TATE, LYNCH & HOLT
Suite 400
321 South Main Street
Providence, Rhode Island 02903
Tel: 401-351-7700
Fax: 401-331-6095

SQUITIERI & FEARON, LLP
Lee Squitieri (admitted pro hac vice)
32 East 57th Street
12th Floor
New York, New York 10018
Tel: 212-575-2092
Fax: 212-575-2184

## CERTIFICATION

I hereby certify that on the 30 day of June, 2005, I mailed a true copy of the within to:

John A. Tarantino
Paul V. Curcio
ADLER POLLOCK & SHEEHAN
One Citizens Plaza
Providence, RI 02903

Mitchell A. Karlan
Aric H. Wu
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166

William J. Kilberg, Esquire
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Karl G. Nelson, Esquire
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201

Karen Beaton, Esquire
Joseph V. Cavanagh, Esquire
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903

James S. Dittmar, Esquire
James O. Fleckner, Esquire
GOODWIN PROCTOR LLP
Exchange Place
53 State Street
Boston, MA 02109

[signature]

**SQUITIERI & FEARON, LLP**
**Attorneys at Law**
**32 East 57th Street**
**12th Floor**
**New York, New York 10022**
**Tel: 212-421-6492**
**Fax: 212-421-6553**

---

Squitieri & Fearon, LLP represents stockholders, consumers and pension plan participants in complex class action cases in state and federal courts throughout the United States. The name partners of Squitieri & Fearon, LLP formed the firm in 2001 and had been partners in the firm formerly known as Abbey, Gardy & Squitieri, LLP. Messrs. Squitieri and Fearon collectively have over 25 years of class action experience.

The partners at Squitieri & Fearon, LLP have been in the forefront of ERISA litigation since their involvement at their former firm in a groundbreaking ERISA employee benefit case involving one of America's largest Pharmacy Benefit Managers.

Recently, as lead counsel in Lalonde v. Textron, Inc., et al., 02-3345 (D.R.I.) an ERISA breach of fiduciary case, the firm was successful in convincing the First Circuit Court of Appeals to reverse the District Court and reinstate all of the claims against Textron and related defendants.

The firm is also one of the lead counsel in Aquilino v. The Home Depot, Inc., 04-CIV-4100 (D.N.J.) an ERISA class action on behalf of former and current Assistant Store Managers seeking recovery of unpaid pension benefits. The firm is also actively involved in the litigation of In Re Aquila ERISA Litigation, (W.D. MO) 04-00865.

The firm is also one of plaintiffs' counsel in several high profile ERISA class action including actions on behalf of 401(K) participants in plans of Cardinal Health, Inc.; Aquila, Inc.; Qwest Communications International, Inc.; Enron, Inc.; Marsh & McClennan, Inc.; and Merck Co., Inc.

Messrs. Squitieri and Fearon are accomplished defenders of shareholder rights as attested to by their successful results on behalf of investors in cases in which either Messrs. Squitieri and Fearon were the (or one of the) lead litigation lawyers:

- Laufer v. Lucent Technologies, Inc., 01-CIV-5229 (D.N.J.) (recovery of approximately 35% of bond purchasers' losses)
- In re Seagate Technology, Inc. Shareholders Litigation, C.A. No. 17932-NC (Del. Ch. Ct. 2000) (approximately $200 million in incremental benefits for shareholders)
- In re Westinghouse Securities Litigation, CA 91-354 (W.D. Pa. 1999) ($67 million recovery)

- In re National Health Laboratories Securities Litigation, CV-92-1949-RBB (S.D.Cal.1995) ($64 million recovery)
- In re National Medical Enterprises Securities Litigation, CV-91-5452-TJH (C.D. Cal. 1994) ($60.7 million recovery)
- In re Coram Healthcare Corp. Securities Litigation, Master File No. 95-N-2074 (D. Colo. 1997) ($47 million recovery)
- In re Leslie Fay Securities Litigation, Master File No. 92 CV 8036 (S.D.N.Y.) ($35 million recovery)
- Demint v. Nationsbank of Florida, et al., 94-995-CIV-T-23B (U.S.D.C. Middle District of Florida, Tampa Division 1996) (partial settlement of certain claims for $25 million, remainder of claims settled for $30 million)
- In re Sun Healthcare Group, Inc. Litigation, Master File No. 95-7005 JC/WWD (D.N.M.) ($24 million recovery)
- In re Caterpillar, Inc. Securities Litigation, Civil Actions Nos. 90-1238, 90-1242 (C.D. Ill.) ($23 million recovery).

The firm has been appointed lead counsel by courts across the country, most recently in the following pending matters:

Securities Purchasers Class Actions:

- Levie v. Sears Roebuck & Co., et al., 04-CIV-7643 (N.D. Ill.)
- Collier v. Aksys, Ltd., et al., 04-CV-1232 (MRK) (D. Conn.)

Shareholder Derivative Actions:

- In re Bristol Myers Squibb Derivative Litigation, C.A. No. 02-CV-8571 (U.S.D.C./S.D.N.Y.)
- In re Computer Associates International Inc. Derivative Action, C.A. No. 04-CV-2697 (U.S.D.C./E.D.N.Y.)

Messrs. Squitieri and Fearon have received commendations from many courts before whom they have appeared, for example:

- In re Waste Management, Inc. Securities Litigation, C.A. No. 97-C-7709 (N.D. Ill. 1999) ($220 million settlement)

United States District Court Judge Wayne R. Andersen favorably commented on the lawyers who actually litigated the case, including Lee Squitieri:

> "...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases ... in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen. But I really mean that."

- In Laufer v. Lucent Technologies, Inc., O1-CV-5229 (D.N.J.), Judge Joel A. Pisano in approving a settlement obtained by Squitieri & Fearon as lead counsel noted that Squitieri & Fearon, LLP was "highly experienced in handling complex, sophisticated securities litigation."

- In In re Seagate Technology, Inc., C.A. No. 17932-NC (Del. Ch. Ct. 2002), Vice Chancellor Leo E. Strine commented: "Clearly, plaintiffs hit upon some-some very interesting facts, and they put in a lot of – a lot of time, and they did highly skilled work against highly skilled opposition."

The Partners and Associates of the firm are:

**Partners:**

LEE SQUITIERI received a B.A. degree from Rutgers University in 1979. He received his law degree from New York Law School in 1983 and was admitted to practice law in the State of New Jersey in 1983 and in the State of New York in 1984. Mr. Squitieri is admitted to the United States District Court for the Southern and Eastern Districts of New York, the Second Circuit, First Circuit, Fifth Circuit, Third Circuit and Seventh Circuit Courts of Appeal, and the District of New Jersey.

STEPHEN J. FEARON, JR. graduated from Boston University in 1986 and received his law degree from New York Law School in 1990. Mr. Fearon is admitted to the New York State Bar and to the United States District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Michigan, the District of Arizona as well as the Second and Sixth Circuit Courts of Appeals.

**Associates:**

DANIEL R. LAPINSKI graduated from Rutgers University in 1990. He received his law degree from Seton Hall School of Law in 1999 and was admitted to practice law in the State of New Jersey in 2000 and in the State of New York in 2001. Mr. Lapinski is admitted to the District Court of New Jersey and the Southern and Eastern District Courts of New York.

MARIA J. CICCIA graduated from Pace University in 1995. She received her law degree from New York Law School in 2002 and was admitted to practice law in the States of New York in May 2002 and Connecticut in June 2002. Ms. Ciccia is admitted to the Southern and Eastern District Courts of New York.

THE|WEXLER|FIRM LLP

Founded in January 2000, The Wexler Firm LLP, based in Chicago, specializes in complex civil litigation. The firm's practice and breadth of experience embodies diverse consumer and commercial litigation matters, including antitrust and consumer class action litigation, civil rights litigation, securities and commodities class action litigation, RICO class action litigation and professional malpractice class action litigation. The focus of the firm's practice is on representing plaintiff individuals and organizations in complex class action matters. In addition to the firm's work in class action representation, The Wexler Firm LLP also represents individuals, businesses and governmental entities in accountant and lawyer malpractice and complex business disputes.

The firm currently serves as counsel in various leadership positions in several federal and multistate cases involving a number of U.S. drug manufacturers accused of restraining trade and engaging in monopolistic activity for the purpose of preventing certain generic drugs from getting to market or preventing brand name competitors' access to consumers. Similarly, the firm is lead counsel in a federal case against over twenty pharmaceutical companies accused of implementing a fraudulent scheme to artificially elevate the prices attributable certain drugs at the expense of consumers and third party payors.

In addition to the cases described above, The Wexler Firm LLP is currently prosecuting various derivative actions and securities class actions in state and federal courts around the country. Consumer fraud class actions in which the firm is actively engaged include several class actions against long distance telephone companies to seek redress for their deceptive nationwide practice of profiting from the collection of excess surcharges imposed on their direct dial long distance customers, which surcharges they purport to remit to the federal universal service fund program. The Wexler Firm LLP also serves as co-counsel, often in leadership capacities, in cases in state and federal court class actions alleging violations of the Truth-in-Lending Act, the Equal Credit Opportunity Act, Title VII, breach of warranty, violations of the consumer protection statutes of various states and other like complex litigation.

Additional lawsuits in which the firm is engaged and the success of the firm and the firm's founder, Kenneth A. Wexler, are chronicled on the firm's website located at www.wexlerfirm.com.

## INDIVIDUAL BIOGRAPHIES

***Kenneth A. Wexler***
**Founder**

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center. He received a Bachelor of Arts degree in 1977, *summa cum laude,* from Washington University in St. Louis, Missouri. Upon graduation from law school, he practiced at the Chicago firm then known as Much Shelist Freed Denenberg Ament & Eiger, P.C., where he became a partner. In January, 1992, Mr. Wexler left Much Shelist to form the firm of Miller Faucher Cafferty and Wexler LLP, where he practiced through December 1999.

Mr. Wexler is a member of the Chicago Bar Association, Illinois State Bar Association, American Bar Association, Chicago Council of Lawyers, Association of Trial Lawyers of America

and Illinois Trial Lawyers Association. He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit. Mr. Wexler has been admitted to practice *pro hac vice* in state and federal courts in Connecticut, Pennsylvania, Virginia, New York, Washington D.C., Florida, Ohio, New Mexico, Colorado, Massachusetts, Minnesota, Tennessee, Wisconsin and California.

In addition to bar activities, Mr. Wexler is a fellow of The Roscoe Pound Institute, a member of the American Constitution Society for Law and Policy and a delegate of People to People International.

***Edward A. Wallace***
**Partner**

Edward A. Wallace is a 1995 graduate of the DePaul University College of Law. He received a Bachelor of Arts degree in 1991 from Eastern Illinois University. Upon graduation from law school, he practiced at a national law firm where his practice focused on complex litigation.

Mr. Wallace is a member of the American Bar Association, where he is the Consumer Protection Law Subcommittee's Newsletter Co-Chair, the Chicago Bar Association, where he is a member of the Class Action Committee, and the Illinois State Bar Association. Mr. Wallace is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern District of Illinois, and United States District Court for the Southern District of Illinois.

***Jennifer Fountain Connolly***
**Associate**

Jennifer Fountain Connolly is a 1998 graduate of the University of Denver College of Law. She received a Bachelor of Arts degree with high honors in 1993 from the University of Chicago. Ms. Connolly is admitted to the bars in Illinois and Colorado, the United States Court of Appeals for the Seventh and Tenth Circuits, and the United States District Courts for Northern District of Illinois and the District of Colorado. Prior to joining the firm in 2002, Jennifer handled similar litigation matters for a law firm in Denver, Colorado for two years and worked as an Assistant Attorney General in the Business Regulation Unit of the Colorado Attorney General's office for two years.

***Ricardo Meza***
**Associate**

Ricardo Meza served as an Assistant U.S. Attorney in the United States Attorney's Office for the Northern District of Illinois. He was assigned to the Organized Crime Drug Enforcement Task Force and the General Crimes Section, where his responsibilities included the investigation and prosecution of federal crimes involving large-scale international narcotics trafficking organizations, money laundering, healthcare fraud, and other white-collar fraud. Mr. Meza's courtroom experience includes 31 federal criminal trials, representation of the State of Texas in tax matters and the argument of numerous appeals before the United States Court of Appeals for the Seventh Circuit. Mr. Meza is a 1990 graduate of The John Marshall Law School. After serving as law clerk to the

Honorable Wendell C. Radford, U.S. Magistrate Judge for the Eastern District of Texas, Mr. Meza began his litigation career with the Mexican American Legal Defense and Educational Fund in Chicago.

***Anthony J. Sievert***
**Associate**

Anthony J. Sievert graduated with distinction in 2000 from the University of Wisconsin Law School, where he was an articles editor at the Wisconsin Law Review. He also graduated with distinction with a Bachelor of Arts degree from the University of Wisconsin-Madison in 1997. Prior to joining the firm, Mr. Sievert worked as a staff law clerk for the United States Court of Appeals for the Seventh Circuit and as an associate at Sidley, Austin, Brown & Wood, where his practice included complex commercial litigation. He is admitted to the bar in Illinois, Wisconsin and the United States District Court for the Northern District of Illinois.

***Amber M. Nesbitt***
**Associate**

Amber M. Nesbitt was admitted to the Illinois Bar in November of 2004. She graduated from the University of Michigan in May of 2000 with a Bachelor of Arts in psychology and sociology. She received her J.D. *magna cum laude* from Loyola University of Chicago College of Law in May of 2004. At Loyola, she was a member of the Loyola University Law Journal and the Publication Editor of the Public Interest Law Reporter. She has worked at The Wexler Firm LLP since February of 2003 as a law clerk and summer associate. Ms. Nesbitt is admitted to the bar of the State of Illinois and the United States District Court for the Northern District of Illinois.

***Andrae P. Reneau***
**Associate**

Andrae P. Reneau is a 2003 graduate of the University of Wisconsin Law School, where he was a managing editor of the Wisconsin Law Review. He received his Bachelor of Arts degree in economics, *cum laude*, from Harvard University in 2000. Prior to joining the firm, Mr. Reneau worked as an associate at Schiff Hardin LLP, where his practice included complex civil litigation. He is admitted to the bar in the States of Illinois and Wisconsin, and the United States District Court for the Northern District of Illinois.

**FIRM RESUME**

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**

This firm operated as a sole proprietorship under the name Law Offices Of Charles J. Piven from May of 1990 through January of 1997. Effective February 1, 1997 the firm was incorporated and renamed Law Offices Of Charles J. Piven, P.A.

**Charles J. Piven** graduated from the University of Miami Law School and was admitted to both the Florida (though currently inactive) and Maryland bars in 1978. Since then, Mr. Piven has been involved in commercial litigation, medical and legal malpractice litigation, securities arbitrations and other complex business, tort and tax litigation (before state, federal and the United States Tax courts). Mr. Piven has participated in representing clients in consumer and securities class action cases and derivative cases since the mid-1980's, having represented clients in over 500 of such cases and having obtained, with co-counsel, recoveries valued in excess of $2 billion.

**Marshall N. Perkins** graduated *magna cum laude* from the University of Baltimore School of Law in 1997, where he was a staff editor for the *University of Baltimore Law Forum*. After receiving his law degree in May, 1997, Mr. Perkins served as law clerk to the Honorable Irma S. Raker of the Court of Appeals of Maryland. Mr. Perkins has practiced in the areas of consumer class action, professional negligence, securities litigation and other complex tort litigation. Mr. Perkins is a member of the Maryland bar, the bar of the United States District Court for the District of Maryland, and the United States Court of Appeals for the Fourth Circuit.